**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LUCRETIA RICKS

     **Plaintiff,**

  v.

MEDICREDIT, INC., et al.,

     **Defendant.**

**CIVIL ACTION NO. 20-3479**

**MEMORANDUM OPINION**

**Rufe, J.**                 **September 27, 2022**

   Plaintiff Lucretia Ricks filed suit against Medicredit Inc., a debt-collection agency, for alleged violations of the Fair Debt Collection Practices Act ("FDCPA").[1] Plaintiff alleges that Defendant was required under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL")[2] to reduce the amount Plaintiff owed, and that its failure to do so violated the FDCPA.[3] Defendant has moved for summary judgment on Plaintiff's claims.[4] For the reasons stated below, the Motion will be granted.

  **I.**  **LEGAL STANDARD**

   Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "Only disputes over facts that might affect the outcome of the suit under the governing

---

[1] 15 U.S.C. §§ 1692, et seq.

[2] 75 Pa. C.S. §§ 1701, et seq.

[3] *See* Compl. [Doc. No. 1] ¶ 40.

[4] Def.'s Mot. Summ. J. [Doc. No. 59].

[5] Fed. R. Civ. P. 56(a).

law will properly preclude the entry of summary judgment."[6] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7] To evaluate a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[8] Nonetheless, the non-moving party must support its opposition to the motion by pointing to evidence in the record.[9] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[10]

## II.    FACTS[11]

On January 3, 2020, Plaintiff sustained injuries in a car crash.[12] Plaintiff obtained treatment at Nazareth Hospital.[13] Plaintiff did not provide the hospital with her motor vehicle liability policy information or any other insurance documentation.[14] As a result, Nazareth considered Plaintiff uninsured and reduced her hospital bill from $900 to $675 based on a system-generated discount.[15] After several months without receiving payment, Nazareth placed

---

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] *Id.*

[8] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[9] *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986).

[10] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[11] The relevant facts are undisputed.

[12] Compl. [Doc. No. 1] ¶ 15.

[13] Compl. [Doc. No. 1] ¶ 16.

[14] Statement of Uncontroverted Material Facts ("SUMF") [Doc. No. 58] ¶ 6; *see* Compl. ¶ 17 [Doc. No. 1].

[15] *See* Pl.'s Opp. Mot. Summ. J. Ex.6 [Doc. No. 61-2] at 62, 66.

Plaintiff's account with Defendant for collection.[16] Defendant then used the information

Nazareth had provided it to send Plaintiff a written notice ("the Letter") informing her of her

outstanding balance with Nazareth and seeking payment.[17] The Letter was the only

communication between Plaintiff and Defendant outside of this lawsuit.[18] After receiving the

Letter, Plaintiff contacted a lawyer. [19] At no point did Plaintiff share or discuss the Letter with

her motor vehicle insurance company. [20]

### III.   DISCUSSION

#### A.  Standing

Defendant argues that Plaintiff has not suffered an injury in fact sufficient to confer

Article III standing.[21] Constitutional standing requires three elements: "injury in fact," "a causal

connection between the injury and the conduct complained of," and a likelihood that a favorable

decision will redress the plaintiff's injury.[22] "To establish injury in fact, a plaintiff must show

that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and

particularized' and 'actual or imminent, not conjectural or hypothetical.'"[23] For an injury to be

"concrete," it must be "real, and not abstract."[24] Additionally, "'a risk of real harm' may 'satisfy

---

[16] Def.'s Mot. Summ. J. [Doc. No. 59] ¶ 8.

[17] Compl. [Doc. No. 1] ¶ 19; Compl. Ex. A.

[18] Def.'s Mot. Summ. J. [Doc. No. 59] ¶ 9.

[19] *See* SUMF [Doc. No. 58]. ¶ 22.

[20] SUMF [Doc. No. 58] ¶ 25.

[21] Def.'s Mot. Summ. J. [Doc. No. 59] ¶ 14.

[22] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

[23] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (quoting *id.* at 560).

[24] *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190, 2204 (2021) (citations omitted).

the requirement of concreteness.'"[25] In the Third Circuit, a statutory violation creates a concrete injury when "the violation actually harms or presents a material risk of harm" to the underlying interest that Congress seeks to protect.[26]

As it did in its earlier Motion to Dismiss,[27] Defendant contends that Plaintiff suffered no harm because she has neither paid the balance nor contacted her insurance provider.[28] The Court's ruling on this issue remains the same—Plaintiff's actions or inaction following the receipt of the Letter is immaterial to the standing inquiry.[29] Because Congress sought to combat "the *use* of abusive, deceptive, and unfair debt collection practices by many debt collectors,"[30] Plaintiff's receipt of the allegedly deceptive letter is a sufficiently concrete injury to confer Article III standing.

Defendant further argues that Plaintiff lacks the requisite harm because she "has no evidence to support the allegation that the [d]ebt is an amount in excess of what Nazareth is allowed to collect[.]"[31] This argument—that Plaintiff lacks standing because she is unable to prove her allegations—conflates the threshold standing inquiry and the underlying merits analysis. As the Supreme Court has held, "standing in no way depends on the merits of the

---

[25] *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 115 (3d Cir. 2019) (quoting *id.* at 341).

[26] *Kamal*, 918 F.3d at 112 (citations omitted).

[27] Def.'s Mot. Dismiss [Doc. No. 23].

[28] Def.'s Mem. Supp. Mot. Summ. J. [Doc. No. 59-2] at 7; *see* Def.'s Mot. Dismiss [Doc. No. 23] at 6.

[29] *See Cartmell v. Credit Control, LLC*, No. 19-1626, 2020 WL 113829, at *11 (E.D. Pa. Jan. 10, 2020) ("Put simply, it is of no moment that Cartmell did not intend to pay the debt. Congress conferred upon him a substantive right to receive truthful, non-deceptive information, which Credit Control violated when it sent, and Cartmell received, the Letter in this case.").

[30] *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(a)).

[31] Def.'s Mot. Summ. J. [Doc. No. 59] ¶ 16.

plaintiff's contention that particular conduct is illegal[.]"[32] Instead, standing asks whether Plaintiff is "the right person to bring this claim."[33] As Plaintiff received the allegedly deceptive letter, that is sufficient to assert a concrete injury in fact and confer standing.

## B. The Merits

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."[34] Defendant disputes the fourth element, arguing Plaintiff has failed to demonstrate "which MVFRL benchmark applies, the amount of the applicable benchmark, or what the Plaintiff's debt should be."[35]

The FDCPA prohibits a debt collector from using "unfair or unconscionable means"[36] as well as "any false, deceptive, or misleading representation or means"[37] in communicating with a debtor. Plaintiff argues that Defendant attempted to collect a debt from her without first employing the MVFRL's "requisite adjustment formula," thereby violating Sections 1692(f) and 1692(e) of the FDCPA.[38]

---

[32] *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citation omitted); *see also Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016) ("The standing requirement is analytically distinct from the merits of the underlying dispute.").

[33] *Davis*, 824 F.3d at 348 (citations omitted).

[34] *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (citation omitted).

[35] Def.'s Mem. Supp. Mot. Summ. J. [Doc. No. 59-2] at 6.

[36] 15 U.S.C. § 1692(f).

[37] 15 U.S.C. § 1692(e).

[38] Pl.'s Resp. Opp. Mot. Summ. J. [Doc. No. 75] at 6.

5

In support of her claim, Plaintiff cites the following MVFRL provision:

[a] person or institution providing treatment, accommodations,
products or services to an injured person for an injury covered by
liability or uninsured and underinsured benefits or first party
medical benefits . . . shall not require, request or accept payment
for the treatment, accommodation, products or services in excess of [1]
110% of the prevailing charge at the 75th percentile; [2] 110% of the
applicable fee schedule, the recommended fee or the inflation index
charge; or [3]110% of the diagnostic-related groups (DRG) payment;
whichever pertains to the specialty service involved, determined to
be applicable in this Commonwealth under the Medicare program
for comparable services at the time the services were rendered, or
the provider's usual and customary charge, whichever is less.[39]

The MVFRL contains three distinct limitations by which certain persons seeking

reimbursement must abide. Plaintiff has failed to identify which of these limitations she deems

applicable to Nazareth and Medicredit, and she offers no evidence as to what the "requisite

adjustment formula" should have been.[40] Instead, Plaintiff merely reiterates her contention that

"had Defendant adjusted Plaintiff's account as required by the MVFRL, her balance would have

been lower than what was claimed in Defendant's letter."[41] However, Plaintiff has not calculated

what she contends is the correct amount due. Nor has Plaintiff produced any evidence that

Medicredit knew or should have known that the information it received from Nazareth was in

any way inaccurate or that either Nazareth or Medicredit knew that Plaintiff was covered by a

motor vehicle policy. In short, there is no evidence from which a reasonable factfinder could

---

[39] Compl. [Doc. No. 1] ¶ 25 (quoting 75 Pa.C.S. § 1797(a)).

[40] Pl.'s Resp. Opp. Mot. Summ. J.  [Doc. No. 75]at 6.

[41] Pl.'s Resp. Opp. Mot. Summ. J. [Doc. No. 75] at 7..

6

determine that the Letter was "unfair," "unconscionable," "false," "deceptive," or "misleading."[42]

## IV.    CONCLUSION

For the reasons stated above, Plaintiff has failed to show that a genuine issue of material fact exists. The Court will therefore grant Defendant's motion for summary judgment. An appropriate order follows.

---

[42] 15 U.S.C. § 1692(e); 15 U.S.C. § 1692(f).